# Warren Rural Electric Cooperative Corporation, Inc. et al. v. Harrison et al.

April 28, 1950.

John B. Rodes, Judge.

Leland H Logan for appellants.

Arch Moore for appellees.

JUDGE CAMMACK—Affirming.

The principal question involved on this appeal is the correctness of the chancellor's ruling that the Board of Directors of the Warren County Electric Cooperative Corporation, Incorporated, was authorized at the Corporation's annual meeting held on August 30, 1949, to borrow up to $10,000,000 from the United States of America under the Rural Electrification Act of 1936, as amended,

7 U. S. C. A. sec. 901 et seq., to further its rural electrification program. Since we concur in the views expressed and the conclusion reached by the chancellor, we quote his opinion in full and adopt it as our own. The opinion follows:

"This cause being submitted on the original petition of Leslie M. Harrison as representative of the membership of the defendants under Section 25 of the Civil Code of Practice, and Jeff H. Doolin representing that class of applicants for membership of the defendants; the answer of W. P. Anderson, representing that class of members of the defendant who legally and actually received notice of the Annual Meeting of the defendant held August 30, 1949, but who did not attend said meeting or execute a proxy authorizing a third person to represent him as a member of the defendant at said meeting; the answer of Raleigh Adkisson and J. S. Wines representing that class of members of the defendant who attended the meeting referred to above in person and cast their votes against the resolution referred to in the original petition filed herein; and the Court being sufficiently advised in the premises, including the exhibits heretofore filed with the pleadings herein, orders and adjudges as follows, to-wit:

"The Warren Rural Electric Cooperative Corporation, Inc., held its Annual Meeting after due notice on August 30, 1949, at Beech Bend Park near Bowling Green, Kentucky. Previous notice had been properly given within the required time provided by the By-Laws of the purposes of the meeting. This notice was evidently carefully prepared and may be found as Exhibit A with the petition. It was recited that the purpose of the meeting was to take action upon the following matters:

"1. Reports of officers, directors and committees.

"2. The election of nine directors of the Cooperative.

"3. To authorize the Board of Directors to borrow additional sums from the United States of America pursuant to the provisions of the Rural Electrification Act of 1936, as amended, necessary or advisable in the judgment of the Board of Directors to finance the construction and operation of electric transmission, distribution or service lines and facilities as such Board may deter-

mine upon; but the aggregate amount of such borrowing not to exceed $10,000,000.

"4. To authorize the Board of Directors to execute on behalf of the Cooperative notes, bonds or other evidences of indebtedness created by such loans.

"5. To authorize the Board of Directors to mortgage or pledge upon such terms as the Board shall determine, all the property of the Cooperative now owned or hereafter acquired in order to secure such loans by the United States of America to the Cooperative, limited, however, in the aggregate amount as above set out.

"6. All other business which may come before the meeting.

"On the day of this meeting a large crowd was present and by mutual consent apparently, the Honorable Charles R. Bell, an able attorney of the Bowling Green Bar, acted as chairman of the meeting, although by Section 4 of Article VI of the By-Laws the president was declared to be the principal executive officer of the Cooperative and, unless otherwise determined by the members or the Board of Directors, shall preside at all meetings of the members and the Board of Directors. After much oratory, a resolution was offered in strict conformity to the notice which had been given. At the time of this meeting, the members of the Cooperative numbered more than 6,000. There were 643 members present in person while more than 2,500 proxies were presented, passed on and counted by the chairman of the meeting. These proxies were not as extensive as the resolution offered, and some question might be raised as to their sufficiency; but this question is not necessary for me to pass on, in any event and whether the proxies are counted or not, the result in the opinion of the Court will be the same. A quorum was present at this meeting and so declared by the Chairman and this was evidently correct under Section 4 of Article III of the By-Laws, which provides that, where the total number of members shall exceed 500, 50 members or 5 per centum of the total membership, present in person, whichever shall be the larger, shall constitute a quorum. Thus, 350 members would have constituted more than a quorum, whereas there were 643 members present in person. The resolution was properly moved and seconded and put to the vote of the meeting. The total vote counting those per-

sons present and voting whether in person or proxy was slightly less than a majority of the entire membership, and Chairman Bell declared the resolution had failed of passage relying upon Section 279.130, Kentucky Revised Statutes, which provides: '* * * The obligations (of the Cooperative) shall be authorized by resolution of the board of directors, after a resolution is first passed by a majority *of the common stockholders* giving the board that power.'

''It is the opinion of this Court that this section has no application to the present Cooperative, which is without capital stock and has no stockholders either common or preferred. The Rural Electric Cooperative Act of the Legislature of Kentucky of 1937 may be found as Chapter 279 of the Kentucky Revised Statutes, and is somewhat confusing in that it embraces and authorizes the formation of both stock and non-stock corporations or of both profit and non-profit corporations. Stock corporations formed for profit are not strictly electric cooperatives where the members furnish no capital and are not producers but consumers and enjoy no profit. The Kentucky Act of 1937 refers to both and care must be taken to distinguish between them in interpreting the various provisions of the Act. However, the Chairman may have been moved by a consideration of applying the democratic principle of majority rule, and therefore required a majority of the total membership in order to pass the resolution. Here, however, the membership is so extensive as is evidenced as in the present instance, the requirement of the majority of the total membership is inapplicable and would prevent the carrying out of the salutary and beneficial purposes of the Cooperative. Besides, as I shall show, the applicable provisions of the Kentucky Act of 1937 only require the majority of all members present and voting at any meeting properly called, in person or by proxy. Nor does this involve any sacrifice of any democratic principle. With the latter test applied, the resolution overwhelmingly carried at the meeting referred to.

''This suit was filed under the Declaratory Judgment Act on December 5, 1949, by two members of the Cooperative, Leslie M. Harrison and Jeff H. Doolin, the first named being a member voting in favor of the resolution and Doolin having an application for membership before the Board of Directors, which is unable to grant

it because of lack of funds to extend transmission lines to his rural home. It is alleged that he represents a large number of other persons too numerous to be brought before the Court, but all interested in the question before us which is one of common and general interest to all of them. He alleges that all such persons desiring services from the defendant Cooperative number approximately 7500 and are scattered throughout the rural areas of the counties of Warren, Butler, Ohio, Grayson, Edmonson, Logan, Simpson and Barren. The Cooperative is made a defendant with all of its Board of Directors and in addition two other members are made defendants representing those who are opposed to the resolution. Thus, in my judgment, all persons have been made parties to this suit who have or claim any interest which would be affected by the declaration, not indeed in person but in a representative capacity since the entire membership is too numerous to be brought before the Court and the question involved is one of common or general interest. The case is one, therefore, where an actual controversy exists involving those whose rights are affected by Statute or the Articles of Incorporation and who are concerned with their own status or relation as members of this Cooperative. The suit therefore properly comes within Section 639a—1 to Section 639a—12 of the Civil Code of Practice. The general powers of Electric Cooperatives are set out in Section 279.110, Kentucky Revised Statutes, and among them is the power to contract debts and borrow money without limitation as to the amount and to pledge or mortgage all or any part of its property for the purpose of securing the payment of the principal and interest of any of its obligations.

"By Section 279.140, KRS, it is provided that: '* * * no corporation formed under this chapter may sell, mortgage, lease or otherwise dispose of any of its property unless the board of directors is authorized so to do *by a majority vote of the members present and voting at the meeting* at which the proposed sale, mortgage, lease or other disposition is voted upon.'

"Moreover, there is provided by Section 279.170, Kentucky Revised Statutes, that one or more Cooperatives may consolidate, 'If the agreement is approved by a majority vote of the members of each corporation

*present and voting at the meeting* at which the proposed consolidation is voted upon, * * *.'.

"By Section 279.180, Kentucky Revised Statutes, it is provided that corporations formed under the chapters referred to may dissolve, provided it is certified by the president and secretary that they have been authorized to execute and sign the articles of dissolution, 'by a majority vote of the *members present and voting at the meeting* at which the proposed dissolution is voted upon.'

"Now there are two apparent exceptions to the rule of resolutions being carried by a majority of the members present and voting at any properly called meeting, and one is found in Section 279.050, Kentucky Revised Statutes, where the Articles of Incorporation having been adopted, properly filed and in force may be amended. 'The amendment shall first be approved by two-thirds of the directors and *then adopted by a vote representing a majority of all the members of the corporation.*' And by Section 279.060, Kentucky Revised Statutes, where other corporations and reorganizations would be brought under the Electric Cooperative Act of 1937, it is provided that a written declaration shall be filed with the Secretary of State signed and sworn to by its President and Secretary to the effect, 'that the company or association has, *by a majority of its stockholders,* decided to accept the benefits and be bound by the provisions of this chapter.'

"Thus, wherever a majority of the entire membership or of all of the stockholders is required, this Statute plainly says so and such instances must be distinguished from those applicable sections which may be applied to the case before us, where motions or resolutions may be passed by a majority of those members present and voting at the meeting either in person or by proxy. Indeed when you consider that the very heart of an Electric Cooperative and its very life depend upon its ability to borrow money from the Federal Government under the Rural Electrification Act of 1936, as amended, which may be found in Volume 7, U. S. C. A., Chapter 31, Section 901 et seq., the purposes of such a Cooperative which are without a doubt beneficial to all those engaged in farming and in rural areas, would be nullified since it is almost impossible in a Cooperative so extensive and

with a membership so numerous as the one before us, to obtain at a meeting, however carefully prepared, when a majority of the total membership vote in favor of any particular measure. No more salutary or beneficial device has been inaugurated in Kentucky or in the nation than that of Rural Electric Cooperatives. The use of electric energy upon isolated and distant farm areas has and will relieve the drudgery and hardships upon the farmers of the State and lighten the burdens of toil, particularly devolving upon the women of the household. Electric energy may be now used in so many ways that are useful in the home, thereby making home life more profitable, useful and comfortable, and by Section 279.-020, Kentucky Revised Statutes, the general policy is declared of encouraging the fullest possible use of electric energy in the State of Kentucky by making it available by transmission and distribution to persons in rural areas of the State at the lowest cost consistent with sound business method and prudent management. The capital for such a Cooperative cannot otherwise be provided than the way it is now being provided under a Federal Act whereby money is provided from the U. S. Treasury upon a long term not to exceed 35 years and a low rate of interest.

"'I am confirmed in this conclusion by reference to the Articles of Incorporation and to the By-Laws which have heretofore been adopted. By Section 5 of Article VIII of the Articles of Incorporation, it is provided: 'Each member shall be entitled to one vote and no more upon each matter submitted to a vote at a meeting of the members. At all meetings of the members at which a quorum is present, *all questions* shall be decided by a vote of *a majority of the members voting thereon in person or by proxy,* except as otherwise provided by law or these Articles of Incorporation.'

"Thus, the Articles of Incorporation are in conformity with the Statute of 1937.

"Turning to the By-Laws, I find that Section 5 of Article III reads: '*All questions* shall be decided by a vote of a majority of the members *voting thereon in person or by proxy,* except as otherwise provided by law, the Articles of Incorporation or these By-Laws.'

"Again Article VIII(c) provides that the Cooperative may not sell, mortgage, lease or otherwise dispose

of or encumber any of its property: 'Unless such sale, mortgage, lease or other disposition or encumbrance is authorized *by a majority vote of the Cooperative entitled to vote, present and voting at the meeting* at which the proposed sale, mortgage, lease or other disposition or encumbrance is voted upon.'

"Thus, carried through the Act of 1937 and also the Articles of Incorporation together with the By-Laws as set out above, are consistent provisions that all questions properly coming before any meeting of the members, shall be settled by a majority vote of those present and voting at such meeting. Measured by these tests the resolution voted on on August 30, 1949, carried and should have been so declared.

"The above is the main issue to be adjudged and declared by this Court and judgment may be drawn consistently with these views and this opinion shall be filed as part of the record.

"The first amended answer of the Warren Rural Electric Cooperative Corporation, Inc., may be filed and also the answer of one W. P. Anderson who shows that he was a member of the Cooperative and duly received notice of the meeting of August 30, 1949, but did not attend, and he may be considered a defendant and permitted to defend if he so desires as representative of all that class of persons who failed to attend the meeting of August 30, 1949, or to vote on the resolution offered. There do not appear to be any facts in controversy and the real issue is one of law upon admitted facts. The records of the Cooperative should show an attested copy of the judgment entered and that the resolution presented was carried as required by the Statutes, the Articles of Incorporation and By-Laws."

Judgment affirmed.